This case was heard before Deputy Commissioner Jan Pittman in Graham on 26 January 1994. A Pre-Trial Agreement entered into by the parties prior to the hearing in this matter is incorporated herein by reference. Following the hearing, the record in this matter was held open in order to allow the parties an opportunity to depose a medical expert. However, rather than deposing Dr. Rawlings, the parties submitted by way of stipulation his records which were received into evidence following the hearing as Stipulated Exhibit Two. Counsel subsequently submitted proposed Opinion and Awards and the record in this matter became ripe for decision.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
STIPULATIONS
Included among the stipulations were those contained in the Pre-Trial Agreement, the medical records received into the evidence at the time of hearing (Stipulated Exhibit Number One) and the medical records of Dr. Rawlings received into evidence following the hearing (Stipulated Exhibit Number Two).
* * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a 44-year-old male born on September 3, 1949. He obtained his high school diploma in 1968 and entered the Navy upon graduation from high school and was honorably discharged on or about June 9, 1991. Plaintiff attended Central Piedmont Community College in Charlotte, North Carolina and DeKalb Community College in Atlanta, Georgia. Upon completion of this training in 1977, he was certified as a pipe welder and pipe fitter. Since 1977, plaintiff has worked in the construction industry as a pipe fitter and pipe welder for a variety of employers.
2. In 1990, plaintiff injured his back while working for a former employer, Community Heating and Plumbing. He was treated conservatively by Dr. Lowe of Salem Orthopedic Associates, P.A. in Winston-Salem, North Carolina. Plaintiff missed no time from work as the result of this injury and required no surgical treatment. Plaintiff last received medical treatment for his 1990 injury on October 16, 1990. At that time, Dr. Lowe noted that plaintiff continued to experience persistent back and leg pain and recommended that plaintiff undergo a CT-scan of his back in order to rule out a ruptured disc. However, plaintiff did not keep his follow-up appointments with Dr. Lowe.
3. Plaintiff began working for defendant-employer on February 22, 1993. During the second week of his employment, beginning March 1, 1993, he was assigned to work at the Konica Plant located on Interstate I-85 near Graham, North Carolina. His average weekly wage was $510, yielding a compensation rate of $340.02.
4. On Tuesday, March 2, 1993, plaintiff and his working supervisor, Keith Lingerfelt, were instructed by the Konica maintenance department to remove and replace a valve weighing more than one hundred pounds. Prior to removing the valve, plaintiff tied a rope-like device to the valve and then straddled the rope over another pipe located several feet above the valve, so that while pulling down on the rope, plaintiff could hold the valve in the air. Plaintiff and Mr. Lingerfelt then removed the bolts holding the valve to the pipe. When the valve was disconnected from the pipe, hot water gushed out of the pipe onto Mr. Lingerfelt. The valve fell to the floor. Plaintiff testified that when the water came gushing out, he raised up and hit his back on a "pressure indicator." However, Mr. Lingerfelt did not see plaintiff hit his back although plaintiff did tell him shortly thereafter that "he`d punctured — hit his kidney."
5. Plaintiff continued working on March 2, 1993, working a total of 10 and 1/2 hours. Other than mentioning to Lingerfelt that he had "punctured — hit his kidney", plaintiff did not report any back injury to defendant-employer.
6. On March 3, 1993, plaintiff reported to work with defendant-employer as usual and was assigned to the ATT job in Winston-Salem. Plaintiff worked 9 and 1/2 hours on March 3, 1993 without any observable difficulty. Again, plaintiff did not ask his employer for medical attention or say any more about his back.
7. On Thursday, March 4, 1993, plaintiff again reported to work with defendant-employer, but did not work for defendant-employer that day. Instead, he asked Keith Lingerfelt, his working supervisor, to drive him to the Sara Lee Plant where his wife worked. Plaintiff told Mr. Lingerfelt that he was taking a union job on March 4, 1993 with another employer that would pay him $25.00 an hour, which was more than he earned on his regular job. Mr. Lingerfelt dropped plaintiff off near his wife's job. Again, plaintiff exhibited no observable difficulties, did not request medical attention or report to Mr. Lingerfelt a back injury.
8. On Friday, March 5, 1993, plaintiff did not report to work for defendant-employer.
9. On Saturday, March 6, 1993, plaintiff reported to the emergency room of Stokes-Reynolds Memorial Hospital at approximately 11:17 p.m. Plaintiff admitted that he had been drinking beer on Saturday and the history plaintiff reported to the emergency room staff was: "Fell two days ago." Diagnosis was degenerating disc, low back pain and sciatica. His discharge instructions were to "follow up with an orthopaedic surgeon this week".
10. On Monday, March 8, 1993, plaintiff reported to his family physician, Dr. David Stallings to whom he reported injuring his low back at work on March 3, 1993 (Wednesday), having "hit it on a pipe edge as he came up". Dr. Stallings found "a lot of ecchymosis, pain, and tenderness, muscle spasm," and referred plaintiff to a neurosurgeon, Dr. Rawlings.
11. Also on March 8, 1993, plaintiff went to defendant-employer's premises and requested that Keith Lingerfelt, plaintiff's working supervisor fill out an accident report. This was the first notice that Mr. Lingerfelt had that plaintiff was formally claiming a back injury as the result of his employment with defendant-employer. In fact, it was the first notice that anyone working with defendant-employer had that plaintiff was formally claiming that he had received a back injury while working with defendant-employer, Mr. Lingerfelt having been told that "he`d punctured — hit his kidney" when they had the trouble with the valve on March 2, 1993.
12. On March 10, 1993, plaintiff was seen by Dr. Rawlings, a neurosurgeon. Dr. Rawlings requested an MRI scan, a lumbar myelogram and CT scan, which revealed a large herniated disc at the L3-L4 level. There was also a degenerated disc at the L4-L5 level. Dr. Rawlings reported:
 Mr. Creel is a 43 year old right handed white male who, on 3/2/93, suffered an on the job injury in which he was struck in the back with some pipe while lifting and twisting a large regulatory valve assembly, which weighed approximately 175 lbs. Since that time, he has had low back, but primarily right lower extremity, pain. The pain goes down his right hip into his anterior thigh and into his knee. Now, the pain has progressed down into his right calf. This is also associated with numbness and weakness of that right leg. He has no other neurological problems, i.e. no bladder, bowel, motor or sensory dysfunction. The past medical history and review of symptoms are noncontributory. (Emphasis added)
13. On March 16, 1993, plaintiff underwent a partial hemilaminectomy and diskectomy on the right at L3-4 which was performed by Dr. Rawlings. Plaintiff recovered well from his surgery. On May 10, 1993, Dr. Rawlings released plaintiff to return to work activities. Plaintiff subsequently returned to work on June 23, 1993 with another employer.
14. On January 20, 1994, Dr. Rawlings rated plaintiff as having a ten percent permanent partial disability to his back which restricted him from heavy lifting of over fifty pounds and from being in a position which would be awkward so that he would find it necessary to twist and possibly re-injure his back.
15. Plaintiff sustained an injury arising out of and in the course of his employment with defendant-employer on or about March 2, 1993 as the result of an accident or a specific traumatic incident of the work assigned and the treatment which he subsequently sought for back pain which ultimately necessitated surgery arose as the result of his employment with defendant-employer. When he hit his back on a pipe while trying to repair a valve, this was a specific traumatic incident which resulted in back injury.
The foregoing findings of fact and conclusions of law engender the following additional:
CONCLUSIONS OF LAW
1. On March 2, 1993, plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with defendant P.I. Mechanical Inc. N.C. Gen. Stat. § 97-2 (6).
2. As a result of his compensable injury, plaintiff was temporarily and totally disabled from March 4, 1993 through and including June 22, 1993. N.C. Gen. Stat. § 97-29.
3. As a result of the compensable injury, plaintiff retains a 10% permanent disability to his back, which entitles him to benefits for a period of 30 weeks. N.C. Gen. Stat. § 97-31 (23).
AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $340.02 per week for the period from March 4, 1993 to and including June 22, 1993 (15 5/7 weeks). This compensation has accrued and shall be paid to plaintiff in a lump sum of $5,343.17, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of the injury to his back when bills for the same have been submitted to the defendant employer and approved pursuant to procedures established by the Industrial Commission.
3. Defendant shall pay plaintiff permanent partial disability benefits at the rate of $340.02 for a period of 30 weeks. This compensation has accrued and shall be paid to plaintiff in a lump sum of $10,200.60, subject to the attorney's fee hereinafter approved.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel.
5. Defendants shall pay the costs.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ________________ DIANNE C. SELLERS COMMISSIONER